UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REBECCA EVANOFF,

                        Plaintiff,

    v.                                    DECISION AND ORDER
                                              12-CV–726

NEW YORK STATE, DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, RONALD W. MOSCICKI AS
AIDER ABETTOR, AND HILDA ANCELET AS
AIDER AND ABETTOR,
                        Defendants.

---

## **INTRODUCTION**

The instant employment discrimination case involving allegations of gender discrimination, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1983 of Title 42 of the United States Code and the New York State Human Rights Law was referred to Magistrate Judge Hugh B. Scott pursuant to 28 U.S.C. §636(b)(1). Defendants New York State Department of Corrections and Community Supervision ("DOCCS") and Ronald Moscicki ("Moscicki") (collectively referred to as "defendants") moved separately to dismiss the complaint pursuant to Federal

Rule of Civil Procedure 12(b).[1]  (Dkt. Nos. 7 and 19)  Magistrate Judge Scott then issued a Report and Recommendation recommending granting both DOCCS' and Moscicki's motions to dismiss, and dismissing the complaint in its entirety.  (Dkt. No. 27)

Plaintiff filed objections to the Report and Recommendation.  (Dkt. No. 28)  DOCCS and Moscicki filed responses to plaintiff's objections (Dkt. Nos. 29 and 30) and the Court heard oral argument.  Pursuant to 18 U.S.C. §636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made.  Upon *de novo* review, and after reviewing the submissions of the parties and hearing oral argument, the Court adopts Magistrate Judge Scott's recommendation that defendants' motion to dismiss be granted and the complaint dismissed for the reasons set forth below.

## BACKGROUND AND PROCEDURAL POSTURE

*Alleged Facts*

Plaintiff was hired by DOCCS as a teacher II at the Lakeview Shock

---

[1] Plaintiff also named another individual, Hilda Ancelet, in her initial complaint. However, on February 6, 2013 plaintiff and defendant Ancelet entered into a Stipulation of Dismissal which was then filed with the Court.  The case was subsequently dismissed with respect to defendant Ancelet only.

2

Incarceration Facility ("Lakeview") in January of 1990.[2] Shortly thereafter, she became a corrections counselor. Plaintiff remains in that position today. Defendant Moscicki has been employed as superintendent of Lakeview from 1989 through the present.

Plaintiff alleges that Moscicki made various derogatory comments regarding female staff and inmates during her employment including, "its because she's a fucking female", and telling a female counselor to "keep her fucking mouth shut". (Dkt. No. 1) Plaintiff also alleges that Moscicki would yell at plaintiff, bang his fist against a wall, or on a desk, or hit his fist into his palm while saying "badda boom." *Id*.

On June 11, 2010, plaintiff and two other female employees filed a complaint with DOCCS' Office of Diversity Management disclosing a romantic relationship between Moscicki and another corrections counselor, Hilda Ancelet. They also reported the "various derogatory comments and treatment they received". (Dkt. No. 1) Plaintiff asserts that since filing the complaint she was subjected to hostility from Ancelet and Moscicki, that Moscicki criticized her for wearing jeans to work and revoked a previous scheduling offer which would have allowed plaintiff to take Fridays off in exchange for having an increased female

---

[2] The facts set forth herein reflect the allegations in plaintiff's complaint. (Dkt. No. 1) All well-pleaded allegations are accepted as true for purposes of this motion to dismiss, but do not constitute the findings of the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002).

work load. Plaintiff also alleges that she was wrongly accused of directing Hispanic inmates not to speak Spanish and chided for not signing into the facility's log book. She does not allege that any actual disciplinary consequences resulted from these incidents.

On March 14, 2011, plaintiff filed a discrimination complaint with the New York State Division of Human Rights ("DHR"). Her complaint was dual filed with the Equal Employment Opportunity Commission ("EEOC"). On January 27, 2012, the DHR issued a Determination After Investigation finding that probable cause existed to believe that DOCCS engaged in, or was engaging in, unlawful discrimination. Plaintiff requested a dismissal for administrative convenience, and on May 18, 2012, the EEOC issued a dismissal and right to sue letter.

The instant complaint alleges, against DOCCS, discrimination on the basis of sex, hostile work environment discrimination, and retaliation all in violation of both Title VII and the New York State Human Rights Law. Plaintiff's complaint names Moscicki as "aider and abettor", presumably with respect to her causes of action under the New York State Human Rights Law. Plaintiff also alleges that Moscicki violated Section 1983 of Title 42 of the United States Code ("Section 1983").

### *Motions to Dismiss*

In support of its motion to dismiss, DOCCS argues the following: (1) plaintiff's sex discrimination claim fails because plaintiff did not suffer an adverse

employment action; (2) plaintiff has not alleged a *prima facie* claim of hostile work environment discrimination because the conduct alleged is not severe nor is it related to plaintiff's gender; and (3) plaintiff's retaliation claim must be dismissed because she has failed to demonstrate that she suffered an adverse employment action. DOCCS also argues that plaintiff's state law claims are barred by the Eleventh Amendment and, in the alternative, that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

Moscicki argues, in support of his motion to dismiss, that: (1) there is no individual liability under Title VII; (2) plaintiff's New York State Human Rights Law claims are barred by the Eleventh Amendment; (3) the complaint fails to state a claim for which relief may be granted; and (4) plaintiff's Section 1983 claims are based upon her Title VII claims, which is not permitted.

## **DISCUSSION**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). In considering a motion to dismiss, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2011).

### Allegations Against DOCCS

#### Sex Discrimination: Title VII

In order to prove a *prima facie* claim of sex discrimination in violation of Title VII, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination. *Collins v. NYC Transit Authority*., 305 F.3d 113, 118 (2d. Cir. 2002). Importantly here, an adverse employment action is a materially adverse change in terms and conditions of employment that is "more disruptive than a mere alteration of job responsibilities." *Miller v. Praxair, Inc*., 408 Fed. Appx. 408, 410 (2d. Cir. 2010). In the context of a discrimination claim, examples of adverse actions include termination, demotion evidenced by loss in salary or benefits, a less distinguished title or significantly diminished responsibilities. *Id*.

Here, plaintiff has failed to allege that she suffered an adverse employment action sufficient to establish a claim of gender discrimination. She claims that employees discussed her internal complaint, she was chided for wearing jeans to

work and other minor infractions, and that a previously promised scheduling request was revoked. However, it is apparent that plaintiff is still employed in the same position, that her salary and benefits remain the same, and that her job responsibilities have not changed in any meaningful way. Plaintiff's allegations do not involve a change in terms and conditions of her employment and plaintiff's grievances are far too minor in nature to support a sex discrimination claim. *See Grant v. New York Office for People with Developmental Disabilities*, 2013 U.S. Dist. LEXIS 107565 (EDNY 2013) (allegations of unfair work assignments, without more, do not qualify as adverse employment actions); *Bowles v. New York City Transit Authority*, 2006 U.S. Dist. LEXIS 3914 (SDNY 2006) (actions that plaintiff complained of, including being warned regarding use of sick time, being assigned tasks outside of his job classification, denial of use of vacation day, having confidential information revealed to other employees, and being required to work through lunch on six days, did not, either individually or cumulatively, rise to the level of adverse employment actions).

Absent any allegations that her salary or benefits were diminished, or that her job itself was materially altered, plaintiff cannot state a claim of discrimination. Thus, her sex discrimination claim pursuant to Title VII is dismissed as to DOCCS.

*Hostile Work Environment: Title VII*

In order to state a cause of action for hostile work environment

discrimination under Title VII, plaintiff must allege: (1) that her workplace was permeated with conduct that was "sufficiently severe or pervasive to alter the conditions of her work environment"; and (2) "a specific basis exists for imputing the conduct that created the hostile environment to [her] employer." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). The first element of a hostile work environment claim requires that plaintiff's allegations demonstrate that the environment was both subjectively and objectively hostile. *See Gregory v. Daly* 243 F.3d 687, 691-92 (2d Cir. 2000). Plaintiff also must allege facts sufficient to show that the environment was created because of the plaintiff's sex. *Foster v. Humane Society of Rochester & Monroe Co., Inc.*, 724 F. Supp. 2d 382, 391-92 (WDNY 20120).

In order for a hostile work environment to exist, the incidents must be more than occasional or episodic; they must be "sufficiently continuous and concerted in order to be deemed pervasive" and "significant enough to transform a work place." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Further, in determining whether a plaintiff has stated a viable hostile work environment claim, "courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d. Cir. 2012).

Here, it is clear based upon plaintiff's allegations that Moscicki's workplace behavior was inappropriate and unprofessional. However, the actions alleged are not sufficiently severe or pervasive enough to support a claim for hostile work environment discrimination. Plaintiff's complaint alleges only two specific derogatory comments by Moscicki in early 2010. She also references general instances where he lost his temper and banged his fist on the table or wall. However, no time frame is provided for these alleged outbursts. The allegations made by plaintiff do not rise to the level of an actionable hostile work environment. *See Chukwuka v. City of New York*, 513 Fed. Appx. 34 (2d. Cir. 2013) (three discriminatory, humiliating or insulting events, spread out over a year, were not sufficiently "continuous or concerted" to establish a hostile work environment); *Smith v. New Venture Gear, Inc.*, 320 Fed. Appx. 33 (2d. Cir. 2009) (the few alleged incidents of a co-worker making derogatory remarks to women were too sporadic to support a hostile work environment claim).

Furthermore, even if the conduct alleged was severe and pervasive, plaintiff has not sufficiently alleged that the hostile work environment was created because of her gender. Based upon the allegations in the complaint, it appears that the majority of the allegedly disparaging treatment of plaintiff and others occurred not because of their sex, but because Moscicki was involved in a romantic relationship with another corrections counselor. In fact, in its Determination After Investigation, the DHR found that any allegedly hostile work

environment occurred as a result of Moscicki and Ancelet's personal relationship:

> A review of the investigative record reveals that Respondents Moscicki and Ancelet may be engaged in a romantic relationship, and that relationship may be creating a hostile work environment for [plaintiff] as well as other female employees who are viewed as ...Moscicki's and Ancelet's "disfavored employees."

The Second Circuit has made clear that discrimination based upon a supervisor's preference for his paramour is not discrimination based upon sex under Title VII. *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306-08 (2d. Cir. 1986); *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10 (2d. Cir. 2013); *accord Alfano v. Costello*, 294 F.3d 365, 374 (2d. Cir. 2002) (district court's dismissal of hostile work environment claims based upon paramour preference was "manifestly correct" since "it is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex"). For these reasons, plaintiff cannot maintain a Title VII hostile work environment claim against DOCCS.

### *Retaliation: Title VII*

In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she participated in an activity protected by Title VII; (2) the employer was aware of her participation in the protected activity; (3) the employer subjected her to a materially adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment

action. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). To constitute an adverse action for a retaliation claim, the allegedly retaliatory action must be "materially adverse". *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 20 (2d Cir. 2006). The Supreme Court has concluded that unlike the substantive discrimination provisions, the anti-retaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of employment. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006). Thus, with respect to a retaliation claim, a materially adverse employment action is any action or actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 57.

Even though the standard is slightly different in a retaliation claim then a gender discrimination claim, plaintiff still has not alleged that she suffered an adverse employment action sufficient to establish a *prima facie* case of retaliation. Plaintiff alleges that she was unfairly chided for various infractions such as wearing jeans to work, not signing-in and telling Hispanic inmates not to speak Spanish. However, she apparently suffered no actual discipline as a result. Plaintiff also claims that a previous offer allowing her to take Fridays off in exchange for taking on an increased female case load was rescinded.

Based upon Second Circuit case law, these allegations are simply not enough to support a retaliation claim. In *Bryne v. Telesector*, the Second Circuit rejected an employee's retaliation claim and found that withdrawal of a job

11

posting, the transfer of plaintiff's position and changes of job responsibilities did not constitute adverse employment action. 339 Fed. Appx. 13, 17-18 (2d. Cir. 2009); *see also Bausch & Lomb Inc.*, 403 Fed. Appx. 593, 597 (2d. Cir. 2010) (no adverse action to support a retaliation claim where plaintiff's hours were never cut, her job responsibilities never decreased, and her access to overtime never changed). Furthermore, in *Lundy v. Town of Brighton*, this Court held that:

> Without more, changes in work schedule or hours will not satisfy the pleading requirements for a Title VII retaliation claim. Although courts have found a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse.

732 F.Supp. 2d 263, 276 (WDNY 2010) Plaintiff here does not allege that her work schedule or hours was altered, only that a previous offer to have certain days off in exchange for a different case load were rescinded. Plaintiff fails to allege how the taking away of this offer, which apparently did not alter her current schedule in any way, was a materially adverse change in her employment. For these reasons, plaintiff's Title VII retaliation claim against DOCCS is dismissed.

### *New York State Human Rights Law Claims*

New York courts require the same standard of proof for claims brought under the New York State Human Rights Law ("NYHRL") as for those brought under Title VII. *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d. Cir. 2001). Thus, a court's ruling regarding a plaintiff's Title VII claims applies with equal force

12

to those claims under the NYHRL. For the very same reasons cited above, this Court finds that plaintiff has failed to establish a *prima facie* case of gender discrimination, hostile work environment, or retaliation as to DOCCS pursuant to the NYHRL.

Moreover, plaintiff's NYHRL claims are barred by the doctrine of sovereign immunity. Rather than an absolute bar to federal court jurisdiction, the Eleventh Amendment establishes sovereign immunity from suit which may only be waived by a state or abrogated by Congress. *Schallop v. NYS Dep't of Law*, 20 F. Supp. 2d 384, 391 (NDNY 1998). Nothing in the NYHRL statute provides for a waiver of the state's sovereign immunity, nor has the state waived its immunity with regard to suits in federal court alleging violations of the NYHRL. *Id*.; *see also Feingold v. The State of New York,* 366 F.3d 138 (2d. Cir. 2003) (holding that claim against DMV is barred by state sovereign immunity since there is "no evidence that the state has consented to suit in federal court under the NYCHRL"); *Jungels v. State Univ. Coll. of N.Y.*, 922 F. Supp. 779, 784 (WDNY 1996) (no basis for finding that a waiver of sovereign immunity exists in the text of the NYHRL or that the state waived its sovereign immunity).

### Allegations Against Moscicki

Plaintiff's claims against Moscicki also fail as a matter of law. The Second Circuit has repeatedly made clear that there is no individual liability under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d. Cir. 1995). Thus, to the extent that

13

plaintiff is attempting to allege any individual liability on the part of Moscicki pursuant to Title VII, those claims are dismissed in their entirety. In addition, the Eleventh Amendment bars plaintiff from suing defendant, in his official capacity, under the NYHRL. *Shanahan v. State of New York*, 2011 US Dist. LEXIS 6348 (SDNY 2011).

A plaintiff may allege claims against an individual defendant as an aider or abettor of an NYHRL violation. *Seale v. Madison CNTY*, 929 F.Supp. 2d 51 (NDNY 2013). In order for a plaintiff to recover against an aider or abettor of a NYHRL violation, she must establish the following: "(1) that she engaged in conduct protected by the NYHRL; (2) there is a causal connection between the protected conduct and the alleged [violations] of the NYHRL; and (3) that [the defendant] actually participated in the discrimination." *Id.*; *see also* N.Y. Exec. Law §296.1(a). Furthermore, a plaintiff must show that the defendant "aided or abetted a primary violation of the NYHRL committed by another employee or the business itself." *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 213 (NDNY 2002). A defendant cannot be held liable for aiding and abetting their own violation of the NYHRL. *Reid v. Ingerman Smith LLP*, 876 F.Supp. 2d 176, 186 (EDNY 2012).

As explained in detail above, this Court finds that plaintiff failed to establish a *prima facie* case of discrimination, harassment or retaliation pursuant to the NYHRL. Since no violation of the NYHRL has been properly alleged, Moscicki

14

cannot be found to be an aider or abettor of NYHRL violations. Thus, these claims are dismissed as well.

Finally, the Court finds that plaintiff has failed to allege a claim pursuant Section 1983. In order to set forth an actionable claim under Section 1983, a plaintiff must assert that a defendant "deprived [her] of a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Gomez v. Toledo*, 446 US 635, 640 (1980). Plaintiff alleges that "[d]efendant Mr. Moscicki has deprived [plaintiff] of her right to be free of retaliation under ["Title VII"] by taking materially adverse job actions against [plaintiff] in response to her complaints." (Dkt. No. 1) Although not specifically stated in the complaint, it appears that plaintiff is alleging that Moscicki violated her constitutional right to Equal Protection.

Even if plaintiff were to establish that Moscicki was acting under color of state law at the time the alleged retaliation occurred, plaintiff's Equal Protection claim parallels her Title VII claim, which the Court has already determined to be without merit. *See Feingold*, 366 F.3d at 159 (the elements of an Equal Protection claim are generally the same as a Title VII claim and the two must stand or fall together). Since plaintiff cannot establish a *prima facie* case of Title VII violation, her Section 1983 claim also cannot proceed.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Magistrate Judge Scott's Report and Recommendation, defendants' motions to dismiss are granted and the complaint is dismissed in its entirety. The Clerk of the Court is instructed to close the case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November 25, 2013